**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATTHEW NORRIS,<br><br>    Plaintiff,<br><br>v.<br><br>DAN DAVIS; NEDRA GREGO;<br>SUPERINTENDENT FOLINO; and<br>DORINA VARNER,<br>    Defendants. | )<br>)<br>) Civil Action No. 10 - 1118<br>)<br>) Chief Magistrate Judge Lisa Pupo Lenihan<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

Plaintiff, Matthew Norris, an inmate currently confined at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania, commenced this action against the following individuals employed at SCI-Greene: Dan Davis, Assistant Superintendent; Nedra Grego, a registered nurse; S. Folino, Superintendent; and Dorina Varner, Chief Grievance Coordinator. In his Amended Complaint, Plaintiff alleges that Defendants violated his rights as protected by the Eighth Amendment by confining him in the restricted housing unit (RHU), which is exacerbating his mental illness. For the reasons set forth below, Defendants' Motion to Dismiss will be granted. An appropriate order follows.

A. Standard of Review

Defendants have filed a Motion to Dismiss the Amended Complaint (ECF No. 35). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97, 99 (1976). The court is bound to give the plaintiff the benefit of every

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). In other words, at the motion to dismiss stage, a plaintiff is required to make a showing rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).. "This does not impose a probability requirement at the pleading stage, but instead, simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. At 232.

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*.

(citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

*Pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Plaintiff's Allegations

Plaintiff alleges that he has bipolar disorder and currently is confined in the Restricted Housing Unit (RHU). He states that he is being regularly treated for his disorder and is regularly seen by Dr. Khan, a psychiatrist, while confined in the RHU. He further claims that, as a result of being confined in the RHU, his mental illness is being exacerbated. He filed two grievances about his confinement in the RHU, which were either denied or rejected. Plaintiff claims that Defendants are denying his rights as protected by the Eighth Amendment of the United States Constitution.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451

U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

### D. The Eighth Amendment

Plaintiff's claims seek to invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff alleges that the conditions of his confinement in the RHU violate the Eighth Amendment prohibition against cruel and unusual punishment. Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the RHU deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. Hutto v. Finney, 437 U.S. 678, 686 (1978); Spaight v. Coughlin, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117 S.Ct. 972 (1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing Hutto), *cert. denied*, 462 U.S. 1137 (1983).

The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id. Accord* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

Plaintiff claims that his confinement in the RHU is exacerbating his mental health issues. The RHU is a place where the worst of the worst are confined. The behavior modification utilized in these programs is a carrot and stick approach, *i.e.*, Plaintiff's negative behaviors are negatively reinforced or "punished" by a substantial loss of privileges and Plaintiff is encouraged to engage in good behavior by the incentive of granting greater privileges as he continues to engage in positive

6

behaviors. Such behavior modification appears throughout the penal system, *i.e.*, the stick of incarceration at a greater security classification and/or higher security prison with the carrot of greater privileges in lower security prisons or the carrot of parole should the inmate conduct himself properly. *See, e.g.* Banks v. Beard, 399 F.3d 134, 136-141 (3d Cir. 2005) (describing LTSU); Rivera v. Pa. Dept. Of Corrections, 837 A.2d 525, 529-532 (Pa. Super. 2003) (same).

The well-established rule is that discipline reasonably maintained in state prisons is not under the supervisory direction of Federal courts. Ford v. Board of Managers of the New Jersey State Prison, 407 F.2d 937 (3d Cir. 1969).

> But so long as incarceration as a form of punishment continues, we are required perforce to recognize that, archaic and indefensible though it may be, its objective is to circumscribe certain activities and opportunities not only available in, but also characteristic of, an open societal setting. And, unpleasant as it is to contemplate the physical restrictions of a 'settled environment', we must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security.

Gittlemacker v. Prasse, 428 F.2d 1, 3-4 (3d Cir. 1970).

It is only when confinement becomes so foul, so inhuman, and so violative of the basic concepts of decency that a federal court should interfere with prison officials who purportedly have the experience and expertise in matters of prison discipline. Plaintiff has failed to evidence conditions that satisfy the objective component of an Eighth Amendment claim with respect to the conditions alleged in the RHU.

The Superior Court of Pennsylvania rejected a similar Eighth Amendment claim regarding the Long Term Segregation Unit (LTSU) wherein it made the following observations.

The basic conditions in this most restrictive of units designed for the most severe behavioral problems in the prison population are, perhaps not surprisingly, very unpleasant. There is a regular problem of feces throwing and the accompanying stench, which has been recently only partially corrected by a modification of the cell doors. Another practice of stopping up toilets until they run over and flood the cells, is not uncommon and can lead to similar unsanitary conditions. Although the institution has a specialized team to go in and clean and sanitize after such incidents, the evidence suggests that there are sometimes periods of delay during which the inmates are residing and even eating their meals within the sight and smell of human waste. There was no evidence, however, that inmates['] food itself was contaminated with this waste. Although petitioners allege that the staff actively encourage the throwing of feces, the evidence did not support this allegation.

As noted above, the inmates in the LTSU have 23 hours of solitary confinement in their cells per day with one hour a day in the yard. There is considerable noise described as banging and screaming on the unit at all hours of the day and night and the lights are left on twenty-four hours a day. Many of the inmates are described as suffering from mental and emotional illnesses, although the severely mentally ill are apparently housed in a separate unit. This Court had the opportunity to visit the Psychiatric Unit which is staffed with a full-time nurse, and the inmates appear well managed and orderly. It is not clear to this Court whether the mental and emotional conditions demonstrated in the LTSU contribute or cause the extreme behavioral issues that landed these inmates in the LTSU or whether those types of conditions are in part caused by long periods of solitary confinement in such a unit.

There have been problems with the heat during which the cells have been quite cold during the winter months, although extra blankets appear to have been available at those times. ... At times, pepper spray is used to control unruly inmates, and the spray lingers in the air, causing problems for the surrounding inmates.

. . .

To punish the LTSU inmates for misconducts, they are sometimes put in "alternate housing," which involves being put into a cell without the inmate's property or clothing, with a smock and no underclothing to wear, a mattress and a "security blanket." According

>to the LTSU policy, where an inmate's misconduct has involved the use of the mattress, such as using it to create a barricade or destroying it for any purpose, this alternate housing would exclude a mattress and require the inmate to sleep on a metal bed frame or on the concrete slab. ...  While in this alternate housing, if the inmate's misconduct has involved misuse of food or utensils (cups or containers have at times been used to collect fluids or feces to use against staff or other inmates), the inmate will be given only a "nutritional food loaf" to eat during the duration of the punishment, which is a frozen concoction of rice and some sort of starch. This is done only for short durations until the inmate is brought into conformity and the process is done under medical supervision. The water is also controlled from outside the cell during these punishments to avoid the inmate causing a flood, although water to drink is apparently made available every few hours.  ... In one instance, Mr. Rivera testified to having been put in a "four-point restraint" for a misconduct, which constituted being chained to a metal bed frame by all four limbs, during which restraint he was unable to use the bathroom and was forced to soil himself with urine and feces.  Prison officials noted this was after he attacked a guard and had to be forcefully removed from his cell.
>
>. . . A counselor is available on the unit once a month, but must share time with all the inmates and there is no privacy for counseling. . . . There is a system of inmate reviews which includes monthly reviews by the Unit Management Team and quarterly reviews by a Program Review Committee.  These reviews, in addition to the established grievance procedures, provide opportunities for the inmates to discuss problems and grievances that they might have with the conditions of their confinement as well as to have their behavioral status reviewed and possibly some of their disciplinary custody time set aside.

Rivera v. Pennsylvania Dept. of Corrections, 837 A.2d 525, 530-532 (Pa. Super. 2003).  The Superior Court held that the conditions of confinement in the LTSU, as explained above, did not deprive the prisoners of the minimal civilized measure of life's necessities, or at least a single, identifiable human need.  Rivera, 837 A.2d at 534 (Pa. Super. 2003) (citing Wilson v. Seiter, 501 U.S. 294 (1991)).

Put simply, the federal and state Pennsylvania courts unanimously have found that the harsh conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, including the most restrictive LTSU, without more, does not violate the Eighth Amendment. *See, e.g.,* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Pressley v. Johnson, 268 Fed. App'x 181, 183 (3d Cir. 2008) (same); Walker v. Campbell, Civ. No. 09-282, 2010 WL 2891488 (W.D. Pa. May 4, 2010) (same); Fortson v. Kelchner, Civ. No. 08-532, 2009 WL 693247, at *3 (W. D. Pa. Mar. 13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Milhouse v. Arbasak, Civ. No. 07-01442, 2009 WL 1119488, 3 (E.D. Pa. April 27, 2009) (holding that mere placement in SHU did not violate the Eighth Amendment); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W. D. Pa. 2008) (holding that 1080 days of disciplinary confinement did not implicate the Eighth Amendment); Dantzler v. Beard, Civ. No. 05-1727, 2007 WL 5018184, at *11-12 (W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, Civ. No. 06-757, 2007 WL 2852525, 14 (W. D. Pa. Sep. 27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); [Gary] Banks v. Beard, Civ. No. 03-659, 2006 WL 2192015, at *11 (W. D. Pa. Aug. 1, 2006) (same).

As noted by the Honorable Richard A. Posner, Circuit Judge of the Court of Appeals for the Seventh Circuit:

> Prison authorities must be given considerable latitude in the design of measures for controlling homicidal maniacs without exacerbating their manias beyond what is necessary for security. It is a delicate balance. "Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state ... how to run its prison system." Duran v. Elrod, 760 F.2d 756, 759 (7th Cir. 1985); *see also* Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Scarver v. Litscher, 434 F.3d 972, 976 -977 (7th Cir. 2006). *See also* Bruscino v. Carlson, 854 F.2d 162,164-65 (7th Cir. 1988).

Here, the record shows that Plaintiff is being treated for his mental illness. It is within Plaintiff's own ability to earn his way out of restricted housing by modifying his behavior accordingly. His claims simply do not state a violation of his rights as protected by the Eighth Amendment. *Accord* Ayers v. Campbell  267 Fed. App'x 176, 177 (3d Cir. 2008).

**AND NOW**, this 15th day of November, 2011;

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the Amended Complaint (ECF No. 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan


                                                Chief United States Magistrate Judge

cc:    Matthew Norris
       ES – 4644
       SCI Greene
       175 Progress Drive
       Waynesburg, PA  15370